**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **BRENT STUCKEY, JEFF SANDERS, DAVY SMITH, and VELMA BLACKWOOD** on behalf of themselves and all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br> **YELLOW TRANSPORTATION, INC., INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 745,** <br><br> **Defendants.** | **CIVIL ACTION NO.** <br><br> **Index No.: _____** <br><br> **(JURY TRIAL DEMANDED)** |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Jeff Sanders ("Plaintiff Sanders" or "Sanders"), Davy Smith ("Plaintiff Smith" or "Smith"), Brent Stuckey ("Plaintiff Stuckey" or "Stuckey"), and Velma Blackwood ("Plaintiff Blackwood" or "Blackwood") (altogether referred to as "Plaintiffs") by and through their attorneys, bring this class action on behalf of themselves and other similarly-situated individuals for damages and other legal and equitable relief from the Defendants' violation of the laws proscribing discrimination based on race, color, and retaliation, stating the following as Plaintiffs' claims against Yellow Transportation, Inc. ("Defendant Yellow" or "Yellow") and against the International Brotherhood of Teamsters and International Brotherhood of Teamsters Local 745 ("Defendant IBT" or "IBT").

## INTRODUCTION

1. Defendant Yellow has a consistent and pervasive history of treating its minority employees less favorably than their white employees. Minority employees of Defendant Yellow have complained to upper management for years about receiving disparate treatment, being forced to work in racially hostile work environments, and facing retaliation by upper management when they complain of these issues.

2. Plaintiffs are current and former hourly employees at Yellow and have endured racial epitaphs and graffiti at the work place, dangerous physical intimidation by white co-workers, and a "hit list" of minority employees who have been marked for termination. They have faced the physical, life-altering threat of having nooses hung at the workplace. They have not been afforded the same opportunities for advancement or placement. Their workplaces are regularly filled with disparate treatment and derogatory slurs.

3. Plaintiffs met repeatedly with management to voice their concerns and, when their pleas fell on deaf ears, met en masse with the Equal Employment Opportunity Commission ("EEOC") to seek resolution. Rather than address these concerns, management ignored their pleas for help and encouraged employees to continue their discriminatory actions.

4. Defendant IBT interfered with each Plaintiff's employment with Defendant Yellow by supporting, encouraging, and contributing to the creation of a hostile work environment at Defendant Yellow's Dallas facilities. IBT required Yellow to reinstate non-black employees terminated for insubordinate, violent, offensive, abusive, and hostile behavior while not doing the same for black employees who committed far less egregious actions, including the Plaintiffs.

5. This is a class action pursuant to FED. R. CIV. P. 23 brought by Plaintiffs seeking damages from Defendants Yellow and against IBT for acts of intentional discrimination based on race and color, as well as for acts of retaliation by Yellow, because Plaintiffs engaged in protected activity. Defendants' acts of discrimination and retaliation are in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq*.

6. Plaintiffs request a trial by jury.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C. § 2000e, *et seq.*, as amended, 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended.

8. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that the Defendants maintain offices, conduct business, and reside in this district and a substantial portion of the acts that make up the basis of the complaint occurred within this judicial district.

**ORIGINAL CLASS ACTION COMPLAINT**

## **PARTIES**

9. Plaintiff Stuckey is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, a Black male citizen of the United States of America and a resident of the State of Texas.

10. Plaintiff Smith is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, a Black male citizen of the United States of America and is a resident of the State of Texas.

11. Plaintiff Sanders is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, a Black male citizen of the United States of American and a resident of the State of Texas.

12. Plaintiff Blackwood is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a Black female citizen of the United States and a resident of the State of Texas.

13. Defendant Yellow Transportation, Inc. is a corporation with offices throughout the United States, with its headquarters located at 10990 Row Avenue, Overland Park, Kansas 6211-1213. Defendant Yellow maintains offices and employees located at 4500 Irving Boulevard, Dallas, Texas 75247.

14. Defendant International Brotherhood of Teamsters is an organization with Local divisions throughout the United States, with its headquarters located at 25 Louisiana Avenue NW, Washington, D.C.

15. Defendant International Brotherhood of Teamsters Local 745 is an organization located at 1007 Jonelle Street, Dallas, Texas 75217.

-4-

**ORIGINAL CLASS ACTION
COMPLAINT**

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

16. On or about July 24, 2008, Plaintiff Stuckey filed a complaint of discrimination with the EEOC relating to discrimination felt by himself and others who are similarly situated. He received his Right to Sue letter dated February 17, 2010.

17. On or about July 22, 2008, Plaintiff Sanders filed a complaint of discrimination with the EEOC relating to discrimination felt by himself and others who are similarly situated. He received his Right to Sue letter dated February 17, 2010.

18. In or around June of 2009, Plaintiff Smith filed a complaint of discrimination with the EEOC relating to discrimination felt by himself and others who are similarly situated. He received his Right to Sue letter dated February 17, 2010.

19. On or about January 25, 2009, Plaintiff Blackwood filed a complaint of discrimination with the EEOC relating to discrimination felt by herself and others who are similarly situated. She received her Right to Sue letter dated February 17, 2010.

## STATEMENT OF FACTS

20. Yellow employs approximately 21,500 people in the United States. Over the years Yellow has fostered an environment that is hostile to Black employees and favors White employees. Black employees are regularly denied opportunities otherwise afforded to White employees while they are overly scrutinized in the positions they have and regularly terminated without basis other.

21. Black employees who complain about the Jim Crow era treatment they receive are systematically terminated without cause. If a rationale cannot be found to terminate the

employee, then they are subjected to harassment and hostility that permeates the workplace, affecting even those Black employees who are not specifically targeted.

22. Black employees are distrusted and held back on account of their Race and Color. Yellow provides any capable White employee with numerous opportunities at the expense of hard working Black employees.

23. White employees are permitted much more leniency regarding rules and regulations on the job.  For example, despite regulations forbidding this, they are permitted to drive forklifts while talking on their cell phones.  Black employees are disciplined or even terminated for this. White employees have even been permitted to threaten Black employees at the work place with their forklifts, attempting to run them over, without fear of recourse.

24. After years of harassment and discrimination, some Yellow employees have decided to speak out against these policies on a federal level.  As a result, they have been further punished and harassed.

25. Defendant IBT, while obligated to represent these Black employees, chooses to only fight for their non-Black members, often allowing Black employees to be disciplined and terminated for no cause and without due process.  They have consistently shown themselves to have disparate policies with regards to White and Black members, only permitting negative action against Black employees.

26. Numerous times, altercations occur wherein White employees are found to have harassed and attacked Black employees.  Defendant IBT will represent the White employee and attempt to get their job back.  Defendant IBT will not do this for Black employees who are terminated for unjust reasons.

**ORIGINAL CLASS ACTION COMPLAINT**

### A. STUCKEY

27. Plaintiff Stuckey is a Black male formerly employed as a casual worker for Defendant Yellow. He was also a member of IBT.

28. Stuckey has been subject to discrimination in the form of a hostile work environment and termination based on his race and color.

29. Throughout his employment, Stuckey has been repeatedly subjected to racially offensive remarks by employees of Yellow and treated disparately in relation to White employees. Stuckey has also been subjected to racially motivated threats, intimidation, harassment and unequal treatment including, but not limited to: verbal abuse, disparate compensation, the publication and dissemination of racially offensive cartoons and drawings, the constant threat of discharge, the prominent display of a hanging noose and effigy, graffiti containing racial epithets and pranks designed to humiliate and embarrass Black employees.

30. In or around December of 2007 Stuckey was terminated from his position with Yellow due to his alleged "mishandling" of freight. This was carried out by James Austin, a White supervisor. Stuckey's immediate supervisor, Derrick Young, informed Austin that there were no issues with Stuckey's performance and that he had specifically approved all of Stuckey's work. Despite this, Stuckey was still terminated.

31. Fellow employee Robert King made a complaint on his behalf to Human Resources relating to the discriminatory termination. Yellow never contacted Stuckey in regards to the complaint of discrimination.

**ORIGINAL CLASS ACTION**
**COMPLAINT**

32. Similarly, Defendant IBT refused to take any action on his behalf, despite his termination violating Union policy. Defendant IBT habitually refused to defend the rights of Black employees while affording protection to White employees.

33. Yellow and IBT have engaged in a pattern and practice of disproportionate enforcement of policies with regard to Stuckey because of his race, color, and in retaliation for his engaging in protected activity by complaining and supporting those who complained about the discriminatory policies described herein. Additionally, IBT has refused to protect Stuckey's rights under the union contract.

### B. SANDERS

34. Plaintiff Sanders is a Black male formerly employed as a casual worker for Defendant Yellow. He was also a member of IBT.

35. Sanders has been subject to discrimination in the form of a hostile work environment and termination based on his race and color.

36. Sanders has been subjected to racially motivated threats, intimidation, harassment and unequal treatment including, but not limited to: verbal abuse, disparate compensation, the publication and dissemination of racially offensive cartoons and drawings, the constant threat of discharge, the prominent display of a hanging noose and effigy, graffiti containing racial epithets and pranks designed to humiliate and embarrass Black Employees based upon their race and color.

37. Sanders' job performance was subjected to greater scrutiny than other employees because of his race, color, and engagement in protected activity.

38. Sanders was subjected to discipline for alleged quality issues yet, White employees with similar performances were not disciplined.

39. Sanders witnessed White employees carrying a noose around the facility, meant to intimidate Black employees. His forklift seat was covered with grease in an effort to harass and endanger him. On one occasion a White employee went into the truck he was unloading and simply knocked over all of the pallets he was unloading, forcing him to restack all of the pallets. He was asked by a White employee if he had another set of tires in case someone wanted to slash the tires currently on his car. He was called stupid by White employees and moved around to various docks whenever a White employee wanted him moved.

40. In or around December of 2007, Yellow terminated Sanders for "running over" a White employee. A witness told Yellow's supervisors that what had actually happened was that a forklift had bumped another forklift, but despite this recount and the lack of any evidence that a White employee had been run over, Sanders was terminated.

41. Sanders reported these incidents to his union representatives but Defendant IBT refused to take any action on his behalf, despite his termination violating Union policy. Defendant IBT habitually refused to defend the rights of Black employees while affording protection to White employees.

42. Yellow and IBT have engaged in a pattern and practice of disproportionate enforcement of policies with regard to Sanders because of his race, color, and in retaliation for his engaging in protected activity by complaining and supporting those who complained about

**ORIGINAL CLASS ACTION COMPLAINT**

the discriminatory policies described herein. Additionally, IBT has refused to protect Sanders' rights under the union contract.

### C. SMITH

43. Plaintiff Smith is a Black male employed as an hourly worker for Defendant Yellow. He is also a member of IBT.

44. Smith has been subject to discrimination in the form of a hostile work environment and termination based on his race and color.

45. Smith has been subjected to racially motivated threats, intimidation, harassment and unequal treatment including, but not limited to: verbal abuse, disparate compensation, the publication and dissemination of racially offensive cartoons and drawings, the constant threat of discharge, the prominent display of a hanging noose and effigy, graffiti containing racial epithets and pranks designed to humiliate and embarrass Black Employees based upon their race and color.

46. Smith' job performance was subjected to greater scrutiny than other employees because of his race, color, and engagement in protected activity.

47. Smith was subjected to discipline for alleged quality issues yet, White employees with similar performances were not disciplined.

48. Smith has consistently been denied the opportunity to bid for jobs to provide him overtime. Defendant IBT and Yellow allow less senior White employees to take these jobs while denying the opportunity to Smith and other Black employees. As a result he earns less than otherwise similarly situated White employees.

-10-

**ORIGINAL CLASS ACTION COMPLAINT**

49. Defendant IBT refuses to take any action on his behalf.  Defendant IBT habitually refuses to defend the rights of Black employees while affording protection to White employees.

50. Yellow and IBT have engaged in a pattern and practice of disproportionate enforcement of policies with regard to Smith because of his race, color, and in retaliation for his engaging in protected activity by complaining and supporting those who complained about the discriminatory policies described herein.  Additionally, IBT has refused to protect Smith's rights under the union contract.

### D. BLACKWOOD

51. Plaintiff Blackwood is a Black female employed as an office worker for Defendant Yellow.  Blackwood has been subject to discrimination in the form of a hostile work environment and termination based on her race and color. She was also a member of IBT.

52. Blackwood is the only Black employee in her office.  She is regularly harassed by non-Black coworkers.  She has complained on numerous occasions but nothing substantive has been done to prevent the ongoing discrimination.

53. In or about April 2008, Blackwood returned from vacation to find that her desk had been moved as a means of harassing her.  In January 2009, Blackwood arrived at work to find that her husband's picture had been defaced.  Approximately a week later, pictures of her husband, son, grandparents and pets were defaced as well.  She was targeted in this way because of her Race and Color.

54. After Blackwood complained about the harassment, one of the individuals responsible for this harassment was terminated.  The other employee who took part was never

**ORIGINAL CLASS ACTION COMPLAINT**

disciplined. The employee who had been terminated was immediately rehired into a similar position to the one he had prior to the incident. White employees who commit such acts of discrimination are never truly punished.

55. In or around January 2009, Yellow's Human Resources department held a meeting to discuss the hostility and harassment Blackwood was subjected to. After the meeting, Blackwood's coworkers intensified their harassment, retaliating against Blackwood for complaining about the discrimination she faced.

56. Yellow and IBT have engaged in a pattern and practice of disproportionate enforcement of policies with regard to Blackwood because of her race, color, and in retaliation for her engaging in protected activity by complaining and supporting those who complained about the discriminatory policies described herein. Additionally, IBT has refused to protect Blackwood's rights under the union contract.

### E. SIMILARLY SITUATED EMPLOYEES

57. One White employee ran over and severely injured a Black manager for Yellow. This employee was not terminated for over six months, despite Yellow's policies regarding safety and such egregious acts of hostility.

58. White employees could take time off from work whenever they requested it, but if a Black employee requested time off they were threatened with termination or discipline. Black employees were given heavier work loads and shorter breaks while White employees enjoy light work and extended break times, even in excess of company policy.

59. Black casuals are consistently assigned to heavier workloads compared to White casuals. Sometimes Black casuals are just given more trailers to unload, or rushed through in order to assist a White employee whose workload was less than the Black employees'.

60. White employees committed many egregious acts with their forklifts, often using it as a weapon and running into Black employees purposefully. Black employees were terminated for any mistake while using the fork lift, purposeful or non-purposeful.

61. Essentially, White employees are Yellow's favorite employees. They can do what they want, when they want to and however they want to without fear of retribution and while receiving promotions and raises on a regular basis. Black employees are forced to proceed with caution at every turn. They are second-class employees in Yellow and regularly subjected to hostility and harassment the likes of which could only occur in a company that had chosen to permit this type of racial inequality and discrimination.

## RULE 23 CLASS ALLEGATIONS

62. Plaintiffs seek to maintain this action as a class action, pursuant to FED. R. CIV. P. 23(b)(3), on their own behalf as well as those who are similarly situated.

63. Under F.R.C.P. 23(b)(3) Plaintiffs must plead that the class:

   a. Is so numerous that joinder is impracticable;

   b. There are questions of law or fact common to the class which predominate any individual questions of law or fact;

   c. Claims or defenses of the representative are typical of the class;

    d.  The representative will fairly and adequately protect the class; and,

    e.  A class action is superior to other methods of adjudication.

64. The Class which Plaintiff seeks to define includes:

> All persons employed and/or represented by Defendants during the statutory period within the United States of America who are Racially Black and/or Black in skin color; and (1) were subject to disparate terms of employment on account of their Race and/or Color; and/or (2) were subject to a hostile work environment on account of their Race and/or Color; and/or (3) were terminated or otherwise disciplined in a manner that violates their Union Contract and Defendant IBT refused to represent them on account of their Race and/or Color ("Class Plaintiffs").

<u>Numerosity</u>

65. Defendant Yellow employs in excess of twenty thousand employees. Upon information and belief, the number of Black employees is so numerous as to satisfy and exceed the numerosity requirement.

<u>Common Questions of Law and/or Fact</u>

66. There are questions of law/fact that govern over the claims which are available to each and every Class Plaintiff, including but not limited to the following:

    a.  Whether Defendant Yellow has a policy and practice of hiring White employees at higher rates of pay than Black employees;

    b.  Whether Black employees are regularly harassed by White employees on account of their Race and/or Color;

    c.  Whether Black employees are regularly terminated by Defendant Yellow due to reasons which are fabricated in order to disparately treat Black employees;

d. Whether Defendant IBT refuses to represent Black employees in grievances and any other instances which they are legally required to provide assistance;

e. Any affirmative defenses obtained by Defendants would be the same for every member of the class;

f. Whether Defendants regularly promote White employees while refusing to promote Black employees; and,

g. Whether there is generally a disparity in the terms of employment afforded to Black employees from the terms afforded their White coworkers.

<u>Typicality of Claims and/or Defenses</u>

67. Plaintiffs were employed by Defendants in the same capacity as all of Defendants' employees aside from Management. Black employees are treated similarly throughout Defendants' facilities. Thus, there are common questions of law and fact which are applicable to each and every one of Defendants' Black employees.

68. This treatment included, but is not limited to, failure to promote, unjustified discipline, disparity in discipline as it is applied, disparity in pay, unwarranted termination, hostility, harassment, racial epithets, and otherwise a disparate work environment for all Black employees.

<u>Adequacy</u>

69. The representative parties represent a wide array of the employees Defendants employ, including hourly, casual and office employees. Further, two of the Plaintiffs have been unjustifiably terminated while the other two remain employed. These employees have shown

strength and courage in coming forward and will continue to show this strength and courage throughout the litigation. Additionally, Plaintiff's attorney has substantial experience in this field of law.

### Superiority

70. Any lawsuit brought by an employee of Defendants would be identical to a suit brought by any other employee for the same violations and separate litigation would cause a risk of inconsistent results. Plaintiffs have no facts relating to the class claims that are atypical from those of the class.

### CAUSES OF ACTION

#### Title VII and 42 U.S.C. § 2000e *et. seq. of the Civil Rights Act of 1964, as amended and 42 U.S.C § 2000e et. seq.*

71. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

72. The conduct alleged herein violates Title VII as Defendant Yellow and IBT have engaged in the practice of discrimination and retaliation against each of the Plaintiffs.

73. Plaintiffs seek to represent all employees of Defendant Yellow and IBT who are similarly situated to themselves in this action.

74. Each Plaintiff requests for relief are set forth below.

## 42 U.S.C. §1981

75.     Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

76.     The conduct alleged herein violates Section 1981 of the United States Code as Defendants Yellow and IBT have engaged in the practice of discrimination and retaliation against the Plaintiffs.

77.     Plaintiffs seek to represent all employees of Defendant Yellow and IBT who are similarly situated to themselves in this action.

78.     Each of the Plaintiffs requests for relief is set forth below.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

- Preliminary and permanent injunctions against the Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

- A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 et seq.; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a et seq.; Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

- Granting an order restraining Defendants from any retaliation in any form against Plaintiffs for participation in this litigation;

- All damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation, and job benefits they would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

- Front pay to the Plaintiffs until such time as they can be placed into the same position, title and grade they would now occupy but for Defendants' discriminatory practices;

- Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

- Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

- Pre-judgment and post-judgment interest, as provided by law; and

- Granting Plaintiffs other and further relief as this Court finds necessary and proper.

Dated:   May 18, 2010					Respectfully submitted,

						DiNovo Price Ellwanger & Hardy LLP
						400 South Zang Blvd.
						Suite 1004
						Dallas, Texas 75208
						(214) 948-3334
						(214) 853-9410 (fax)


						By:	/s/ Jay D. Ellwanger_____
							Jay D. Ellwanger
							Texas State Bar No. 24036522

-18-

**ORIGINAL CLASS ACTION COMPLAINT**

OF COUNSEL:

James Vagnini
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFFS**